UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON
CRIMINAL ACTION NO. 03-74-JBC
CIVIL ACTION NO. 05-160-JBC

UNITED STATES OF AMERICA                                PETITIONER

v.

RENATO MARTIN ACOSTA,                                   RESPONDENT

REPORT & RECOMMENDATION

Renato Martin Acosta, currently incarcerated at a federal correctional facility in Ashland, Kentucky, has filed a *pro se* civil motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Defendant's motion has been referred to the undersigned for initial consideration and for a report and recommendation pursuant to 28 U.S.C. § 636(b).

**I. Preliminary Review**

On preliminary review of the defendant's motion, and noting that it was "construing the claims liberally," this court held that:

> [T]he claims can be read as including a challenge to the voluntariness of the defendant's waiver, particularly the defendant's claims that he suffered from a mental disorder and/or that the United States failed to advise him of his rights under the Vienna Convention. While these claims may or may not suffice to overcome the presumptive validity of the waiver, they are sufficient to require the United States to respond to the motion.

In its response, the United States argues that the waiver executed by the defendant was indeed valid.

Defendant was indicted on November 12, 2003 on a seven-count indictment charging him with, among other things, conspiracy to traffic in cocaine and marijuana (Count 1). Defendant pleaded guilty

to Count 1 pursuant to a written plea agreement (the "Agreement"), and the remaining six counts were dismissed pursuant to that agreement. In the Agreement, the defendant acknowledged that the United States could prove the following facts were the case to proceed to trial:

> The defendant, Renato Martin Acosta, was engaged in a conspiracy with those defendants charged in Counts 1 and 2 of the indictment to distribute and possess with the intent to distribute 15 kilograms or more of cocaine and 50 kilos or more of marijuana in Boone and Kenton Counties, Kentucky and elsewhere. Renato Marin Acosta was supplied cocaine and marijuana by Jorge Hurtado and Eusebio Acosta, aka Justino Gachez. Hurtado, Eusebio Acosta and Renato Marin Acosta lived in Boone County, Kentucky. Jorge Hurtado and Eusebio Acosta received the cocaine and marijuana from individuals in Indiana. He also regularly transported drugs and collected money from Hurtado and Renato Martin Acosta. In addition, Renato Martin Acosta delivered additional cocaine and marijuana to others for Hurtado and collected money for him, as well. Renato Martin Acosta distributed part of the cocaine and marijuana he received from Hurtado and Eusebio Acosta to Walter Farmer for distribution in West Virginia. Renato Martin Acosta and Farmer were assisted in part by Aaron Venable and Jessica Schulkers in this distribution process.

DE # 193, Plea Agreement ¶3. Defendant was sentenced on October 4, 2004 to one-hundred fifteen months imprisonment, to be followed by five years of supervised release. Defendant did not appeal his conviction or sentence. Instead, defendant filed this motion to vacate his conviction on August 15, 2005, alleging four grounds for relief, one of which is founded on the recent decisions by the United States Supreme Court in *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *United States v. Booker*, 125 S. Ct. 738, 749 (2005).

## II. ANALYSIS

### A. Defendant's "Knowing" Waiver Bars Relief

A motion brought pursuant to 28 U.S.C. §2255 is a collateral attack on a conviction. The defendant expressly waived his right to appeal or collaterally attack his conviction in his written plea

agreement [DE #193, ¶8]. The defendant also waived his right to appeal and the right to attack collaterally any sentence that did not exceed the high end of his guideline range, as established by the Agreement. *Id.* Therefore, absent exceptional circumstances, the defendant's present § 2255 motion is barred by the express terms of his plea agreement.

A waiver is a "relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725 (1993). Even a constitutional right may be waived, as long as a defendant did so by knowingly and voluntarily entering into a plea agreement. *United States v. Ashe*, 47 F.3d 770, 775-6 (6th Cir. 1995), *cert. denied,* 516 U.S. 850 (1995). The Sixth Circuit has held that a defendant's informed and voluntary waiver of the right to collateral attack bars such relief. *See Davila v. United States,* 258 F.3d 448, 451 (6th Cir. 2001); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999); *Hunter v. United States*, 106 F.3d 1109, 1113 (6th Cir. 1998).

As stated, on preliminary review this court liberally construed the defendant's claims to include a challenge of his waiver on the basis of the defendant's alleged mental disorder and/or alleged failure of the United States to advise him of his rights under the Vienna Convention. However, on more complete review, the court concurs with the United States that the record demonstrates that the waiver was both voluntary and knowing. Because the record demonstrates that the defendant knowingly, intelligently, and voluntarily waived his right to collaterally attack his sentence, he is now precluded from collaterally attacking his conviction or sentence under 28 U.S.C. §2255. *Davila v. United States,* 258 F.3d 448, 451 (6th Cir. 2001); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("[S]olemn declarations in open court carry a strong presumption of verity").

The defendant's knowledge of the waiver is evident from review of the plea hearing. In

addition to the defendant signing the written plea agreement, the Assistant U.S. Attorney explained in open court the waiver of the right to appeal and right to attack collaterally the conviction or sentence. [DE #202, TR Rearraignment at pp. 23-24]. Next, the defendant himself expressly stated on the record that he understood the waiver, that he gave up such rights voluntarily, and that he had reviewed the plea agreement with his attorney and understood its contents. [*Id.* at pp. 25-27, 33, 49].

### B. The Defendant's Competency: "Voluntariness" of the Waiver and Plea

Left unable to contradict his knowledge of the waiver, the defendant alleges that his presentence report indicated past suicidal ideation, and that the court erred by failing to follow up with a psychiatric examination "for the purpose of determining" unspecified "issues." Construing the claims liberally, the defendant challenges the voluntariness of his entire plea, including but not limited to the waiver which was part of it, through an attack on his competency to enter that plea.

In order to prevail in such a challenge, the record must reflect that the court was presented with sufficient facts to believe that a psychiatric examination was required. The defendant bears the burden of proving that he was not mentally competent to enter his plea. *See Conner v. Wingo*, 429 F.2d 630, 639 (6th Cir. 1970), *cert. denied*, 406 U.S. 921 (1972). To satisfy this burden, he must produce facts that positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to his actual competency during the guilty plea hearing. *See Carter v. Johnson*, 131 F.3d 452, 460 (5th Cir. 1997), *cert. denied*, 523 U.S. 1099, 118 S.Ct. 1567, 140 L. Ed. 2d 801 (1998). An accused is competent to enter a guilty plea if: 1) he has the "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and 2) he has "a rational and factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 403 (1960) (*per curiam*);

*United States v. Ford*, 184 F.3d 566, 580 (6th Cir. 1999), *cert. denied*, 528 U.S. 1161 (2000).

In this case, Acosta has not met his burden to show that he was mentally incompetent to enter his plea and voluntarily execute the waiver. He admits that his attorney failed to bring any psychological issues to the court's attention, and further admits that he did not tell anyone about his allegedly suicidal thoughts. As noted in *Rice v. United States,* 420 F.2d 863, 865 (5th Cir. 1970):

> Just exactly what 'quantum of evidence' requires a judge to order a mental examination cannot be determined with weights and measures. But the courts have attached importance to certain objective tests. For instance, if the petitioner appears to have a long history of erratic and disturbed behavior, if he states that he has been a patient in many hospitals for treatment of nervous of mental diseases, then the 'quantum of evidence' is normally said to have been reached.

In this case, the presentence report contained only one reference to Acosta's mental health, at ¶115:

> Mr. Acosta-Martin advised that while working at Waverly, Virginia, he considered suicide on a "couple" of occasions. He stated that his move from Florida and a broken relationship resulted in depression for several months and that "he didn't care about life." Mr. Acosta-Martin noted that *he did not tell anyone about these suicidal feelings and eventually his outlook approved. He reported no psychological or psychiatric treatment or counseling for this episode.*

(Italics added).

Such a brief and unremarkable reference to the record to a past psychological issue is wholly insufficient to generate a substantial and legitimate doubt as to the defendant's competency to enter his plea. In fact, the defendant does not even allege in his current §2255 motion that his long-ago suicidal thoughts, which completely resolved on their own without treatment, somehow rendered him incompetent to enter his plea or waive his right to collaterally attack his conviction. To the contrary, Acosta clearly stated to the court at the time of his plea that he was competent and that he wanted to

plead guilty. He denied ever having a nervous or mental or emotional problem, DE #202 at p. 8, and his attorney likewise advised the court that he believed his client to be competent to enter a plea of guilty. *Id.* at 9.

Aside from defendant's current post-hoc assertions that the court "should have" made a further inquiry into his mental health, there is no evidence that the defendant was so impaired that he was not competent to enter a plea. While there is no evidence at all that this defendant suffered from any mental impairment, even if he had, the mere fact that a defendant suffers from mental illness does not render him or her incompetent. A defendant may suffer from serious and even untreated mental illness but still be competent to enter a plea so long as he had the "ability to consult with his lawyer with a reasonable degree of rational understanding," and "a rational and factual understanding of the proceedings." *Id.*

In this case, the defendant, who had completed a high school education, was found to be competent. The defendant's performance in the course of a colloquy may confirm, or occasionally undermine, his assurances. *Miranda-Gonzalez v. United States*, 181 F.3d 164, 167 (1st Cir. 1997); *United States v. Vaughn* 13 F.3d 1186, 1187 (8th Cir.), *cert. denied*, 511 U.S. 1094, 114 S. Ct. 1858 (1994). Conversely, a defendant's prior medical history or behavior may call for heightened vigilance. *United States v. Parra-Ibanez*, 936 F.2d 588, 595-96 (1st Cir. 1991). Here, Mr. Acosta's statements during the course of the plea proceeding raised absolutely no concerns about his mental condition. Both defendant and his counsel expressly assured the court that they had met and conferred on their course of action, and that the defendant understood the nature of the charges and consequences of his plea. The transcript reflects responses by the defendant which appear coherent and logical, with no sign of incoherency or confusion.

THE COURT: Have you ever had a drug or alcohol problem?

THE DEFENDANT: No.

THE COURT: Have you ever had a nervous or mental or emotional problem?

THE DEFENDANT: No, never.

THE COURT: Are you under the influence of any drugs or alcohol today?

THE DEFENDANT: No.

THE COURT: Have you been able to understand this case, understand the charges against you, work with your attorney, and make what you think are reasonable decisions?

THE DEFENDANT: Yes.

THE COURT: ...All right. Mr. Acosta, are you fully satisfied with the advice, representation, and counsel of your attorney, Mr. Zevely?

THE DEFENDANT: Yes.

THE COURT: And Mr. Zevely, do you believe that your client is competent to plead today?

MR. ZEVELY: Yes, Your Honor.

[*Id.* at pp. 7-9].

To order a competency hearing, "[t]he trial court must have 'reasonable cause' to believe that the defendant is 'presently' suffering from an impairment resulting in mental incompetency." *United States v. Leggett*, 162 F.3d 237, 241 (3d Cir. 1998), *cert. denied*, 528 U.S. 868 (1999). The trial court is always in the best position to determine the need for such a hearing. The question is "[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir.), *cert. denied*, 461 U.S. 916

(1983).

The failure of the defendant or his counsel to raise the competency issue at the time of his plea is persuasive evidence that there was no *bona fide* doubt as to Acosta's competency at that time. *See e.g., Pedrero v. Wainwright*, 590 F.2d 1383, 1384 (5th Cir.), *cert. denied*, 444 U.S. 943, 100 S. Ct. 299 (1979). Due process requires only that certain necessary procedural safeguards be provided to the defendant to ensure a fair evaluation of his competency when a *bona fide* doubt is raised. *Id.* At the time of his plea, Acosta gave absolutely no indication of any hesitation to enter the plea, or hint of incompetency. The court carefully questioned Acosta concerning any medications or any other factor that might hamper his ability to understand what was going on in court that day, and the defendant assured the court that he had no difficulty in understanding the proceedings. The transcript reveals no obvious sign of mental distress or illness at the time of his plea. Therefore, the trial court did not err in finding that Acosta had the capacity to assist in his defense and comprehend the nature and consequences of his plea proceeding.

Given the clear answers provided by defendant to the court's inquiries, the court was not required to go further and request a competency hearing. Even where far more issues concerning a defendant's mental health are exhibited in the record than were presented here, the Sixth Circuit has repeatedly upheld trial courts' decisions not to request a competency hearing. *See e.g., United States v. Denkins*, 367 F.3d 537, 544 and n.3 (6th Cir. 2004) (affirming denial of motion to withdraw plea, where defendant advised court he suffered from memory problems, ringing in his ears, and hallucinations, but assured the court of his competence in colloquy in open court); *Williams v. Bordenkircher*, 696 F.2d at 467; *Owens v. Sowders*, 661 F.2d 584, 585-86 (6th Cir. 1981).

At sentencing, the probation office had recommended the denial of a decrease for acceptance of responsibility, based upon the fact that a hacksaw blade was discovered in the defendant's possession while he was incarcerated awaiting sentencing.[1] The defendant's attorney stated to the court that the defendant's explanation for possessing the contraband was that he intended to use it to commit suicide at some point, although counsel admitted that the purpose of the contraband was in "some dispute." [DE #203, TR Sentencing at p. 6]. This reference to the defendant's possible psychological state following his conviction does nothing to undermine his competency. *See Mallett v. United States*, 334 F.3d 491, 497-498 (6th Cir. 2003)(noting psychological report which supported motion for finding of reduced mental capacity did not suggest incompetency to stand trial, denying §2255 motion).

**C. The Scope of Defendant's Waiver**

Having concluded that the defendant is generally barred from pursuing this collateral attack, the only remaining issue is whether *any* of Acosta's claims survive his broad waiver. A limited exception to waiver may exist where a defendant's claims go to "the core issue...[of] the voluntariness of the plea." *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)(holding that a plea agreement waiver of post-conviction rights does not waive the right to bring a §2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver); *Davila v. United States,* 258 F.3d at 451.

In this case, I have already found that the trial court reviewed the waiver clause with defendant

---

[1]The court ultimately granted the three-point decrease.

and explained the ramifications of making such a concession. Further, the court specifically asked defendant if he had discussed the Agreement with his counsel. Thus, the defendant's waiver was knowing and voluntary, and §2255 relief is properly barred to him. The defendant makes no additional allegations which would undermine the court's conclusion that the defendant has waived *all* §2255 claims. Alternatively, Acosta's claims would still be barred because they are without merit.

### D. Failure to Appeal

Even if the waiver were not valid, the defendant's failure to raise his claims on direct appeal would foreclose further review in this §2255 proceeding. Claims that could have been but were not raised on direct appeal may not be reviewed under §2255, unless Acosta demonstrates cause and actual prejudice to excuse his failure to do so. *See United States v. Frady,* 456 U.S. 152, 167-69 (1982). In this case, Acosta has utterly failed to show either cause or prejudice.

### E. Apprendi/Booker/Blakely Do Not Apply

The defendant's primary argument for relief under §2255 is that the drug amount attributed to him for purposes of sentencing was erroneous, because he pleaded guilty only to Count 1, involving a smaller quantity. This claim is without merit for two reasons in addition to the referenced waiver: 1) the defendant explicitly accepted "as relevant the offense conduct charged" in Counts 2 through 7 in his plea agreement; and 2) the case law on which the defendant relies cannot be retroactively applied to post-conviction motions.

The defendant's claim rests on application of the rule first announced in *Apprendi v. New Jersey,* 120 S.Ct. 2348, 2362-63 (2000), expanded upon in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and made applicable to the U.S. Sentencing Guidelines in *United States v. Booker*, 125 S. Ct.

738, 749 (2005). In *Blakely,* the Supreme Court held that a Washington state court sentencing schedule which permitted the sentencing judge to enhance a defendant's sentence beyond the statutory minimum was unconstitutional. Reiterating and expanding upon *Apprendi*, the Court found that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 124 S.Ct. at 2536.

Virtually all courts addressing the issue, including the Sixth Circuit, have held that *Booker* does not apply retroactively to cases on collateral review. *See Humphress v. United States,* 398 F.3d 855 (6th Cir. 2005); *accord McReynolds v. United States,* 397 F.3d 479 (7th Cir. 2005)(*Booker* does not apply retroactively to criminal cases that became final before release of the case on January 12, 2005); *see also In re Andersen*, 396 F.3d 1336(11th Cir. 2005). As this court is bound by and in full agreement with *Humphress, Blakely* and its progeny cannot be applied retroactively on collateral review and provide defendant with no grounds for relief from his conviction and sentence.

In any event, the defendant expressly admitted in both in the written plea agreement and in open court to the drug amount of 15 kilograms of cocaine and 50 kilograms of marijuana. The plea agreement contained a non-binding sentencing recommendation that "the Defendant's relevant conduct includes 15 kilos of cocaine and 50 kilos of marijuana. [DE #193, ¶5]. During rearraignment, the court engaged the defendant in the following colloquy to confirm the amount of drugs involved:

THE COURT: Okay. And I think you have already agreed that the amounts involved here are 15 kilograms of marijuana and 15 kilograms of cocaine, is that right?

MR. ZEVELY: I think its 15 kilograms of cocaine and 50 kilograms of marijuana.

MS. VOORHEES: That's correct.

>THE COURT: Okay. 50 of marijuana. My mistake. Okay. Is that right, Mr. Acosta?
>
>DEFENDANT ACOSTA: Yes.
>
>[DE #202, TR. at 62].

*Apprendi* would not apply even if *Blakely/Booker* were retroactive because the district court did not base Acosta's sentence on any facts other than those which Acosta admitted in his plea agreement or in open court. *See Booker*, 125 S.Ct. at 756; *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Blakely*, 124 S.Ct. at 2537 ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant." ); *see also United States v. Murdock*, 398 F.3d 491, 501 (6th Cir.2005) (finding no Sixth Amendment violation where defendant admitted facts found by judge).

### F. Ineffective Assistance

To prove the ineffective assistance of counsel, a defendant must first show that his attorney's performance was deficient, and second, that the deficient performance prejudiced his defense. *See Strickland v. Washington,* 466 U.S. 688 (1984). In addition, where a defendant has pleaded guilty, he must show that in the absence of counsel's errors he would not have pleaded guilty but would have insisted on proceeding to trial, *see Hill v. Lockhart*, 474 U.S. 52 (1985), or that the result of the sentencing proceeding would have been different. *United States v. Hunter*, 160 F.3d 1109, 1114 (6th Cir. 1998).

In this case, the defendant argues that his attorney's failure to investigate the defendant's

"psychological background" was ineffective, because it would have revealed that the defendant suffered from "a disorder" which could have resulted in a lower sentence. Notably, the defendant fails to state what "disorder" he might suffer from, and offers no medical evidence whatsoever that he suffers from any "disorder" which either effected his competency or could have impacted sentencing. The defendant merely alludes to his "troubled childhood" and "prior psychological history and his alcohol problem."

Neither the presentence report nor the colloquy during rearraignment suggest any hint of either any serious psychological history or an alcohol problem. The defendant's speculative musings regarding vaguely articulated and overwhelmingly common psychological factors fall far short of the proof required to satisfy the two-pronged test of *Strickland*. The defendant can show neither deficient performance nor prejudice.

### G. Vienna Convention

The defendant argues that the United States failed to notify him that he had the right to consult with a member of his foreign consul, in violation of the Vienna Convention. However, a violation of the Vienna Convention does not provide a defendant in a criminal case with the right to any relief unless the defendant can establish prejudice as a result of the violation. *See Hernandez v. United States,* 280 F. Supp.2d 118, 124 (S.D.N.Y. 2003). In this case, the defendant has not even alleged, much less established prejudice. Therefore, he is entitled to no relief. *See United States v. Emuegbunam*, 268 F.3d 377 (6th Cir. 2001).

### H. The Defendant's Motion for Summary Judgment

The defendant filed a separate motion for summary judgment, urging this court to grant him immediate relief on the basis that the United States failed to timely respond to his motion to vacate his

conviction and sentence. This court has already ruled that the response of the United States was timely filed. *See* DE #208. Therefore, defendant's motion for summary judgment in his favor will be denied.

### III.  CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED THAT** the defendant's motion to vacate his conviction and sentence [DE #199] be **denied**, that the defendant's motion for summary judgment [DE #207] also be **denied**, and that this case be dismissed from the active docket.

**OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of the same or further appeal is waived. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within ten (10) days after being served with a copy. Fed. R. Civ. P72(b).

This the 30th day of December 2005.

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge